UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RACHAEL MICHELLE POST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:20-CV-315 RLW |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Rachael Michelle Post brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.  For the reasons that follow, the decision of the Commissioner is reversed and remanded for further proceedings consistent with this Memorandum and Order.

## I. Procedural History

Plaintiff filed her application for DIB on April 20, 2017.  (Tr. 14, 23).  Plaintiff alleged she had been unable to work since June 3, 2016, due to brachial plexus, diabetes, and asthma. (Tr. 143). Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff and counsel appeared for an initial hearing on December 7, 2018. (Tr. 29-46).  Plaintiff testified concerning her disability, daily activities, functional limitations, and past work.  Id.  The ALJ also received testimony from vocational expert

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

("VE") Delores Gonzalez. Id. On March 27, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (Tr. 14-32). On May 6, 2019, Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. (Tr. 124). On December 26, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review. See 42 U.S.C. §§ 405(g), 1383(c)(3).

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence in the record as a whole. Specifically, Plaintiff argues the ALJ's findings regarding Plaintiff's residual functional capacity are not supported by the medical evidence. Plaintiff also argues the ALJ gave insufficient consideration to the functional limitations associated with Plaintiff's medically documented bilateral carpal tunnel syndrome and thoracic outlet syndrome. Plaintiff requests that the decision of the Commissioner be reversed, and the matter be remanded for an award of benefits or for further evaluation.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II. Legal Standard

To be eligible for DIB under the Social Security Act, plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if his [or her] physical or mental

impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Second, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his or her ability to do basic work activities. If the claimant's impairment is not severe, then he or she is not disabled. Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At the fourth step, if the claimant's impairment is severe but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011); see also 20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his or her RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the

3

claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

In the fifth step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy. See Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. Id. In the fifth step, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." Id. (internal quotation marks and citations omitted. Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's

4

decision." Reece v. Colvin, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Id. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016).

### III.  The ALJ's Decision

In a decision dated March 27, 2019, the ALJ applied the above five-step analysis and found Plaintiff had not engaged in substantial gainful activity since June 3, 2016; Plaintiff has the severe impairments of diabetes mellitus, asthma, bilateral carpel tunnel syndrome (CTS), bilateral thoracic outlet syndrome (TOS), and migraines (Tr. at 16); and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 17).

As for Plaintiff's RFC, the ALJ found Plaintiff retained the ability to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[2] but that she had the following additional functional limitations:

> [Plaintiff] can never climb ladders, ropes, or scaffolds, can only occasionally crawl, frequently handle and finger bilaterally, and should avoid workplace hazards, such as unprotected heights and moving mechanical parts.

(Tr. 18).

---

[2]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

5

At the fourth step, the ALJ found Plaintiff was unable to perform her past relevant work. (Tr. 21). At the fifth step, relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including addresser, document preparer, and information clerk. (Tr. at 22). At the end of her analysis, the ALJ concluded Plaintiff was not disabled. (Tr. 27).

## IV. Discussion

In her Brief in Support of Complaint, Plaintiff argues the ALJ did not make her RFC determination based on substantial evidence in the record. Plaintiff faults the ALJ for relying on the opinion of John Marshall Jung, M.D., a non-examining medical source, who rendered his opinion more than a year prior to the ALJ's decision. Plaintiff highlights that the ALJ's RFC determination deviated from the opinions of her treating physicians and argues the ALJ did not assign the proper weight to the medical opinions and findings in the record. Defendant responds that the ALJ properly evaluated the medical opinions and findings under the new regulations.

### A. RFC Standard and Applicable Law

RFC is what a claimant can do despite his or her limitations and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The RFC is a function-by-function assessment of an individual's ability to do work-related activities on a regular and continuing basis. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, and the claimant's own descriptions of his or her limitations. Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017); Pearsall, 274 F.3d at 1217. According to

6

the Eighth Circuit, "Ultimately, the RFC determination is a 'medical question,' that 'must be supported by some medical evidence of [the claimant's] ability to function in the workplace.'" Noerper v. Saul, 964 F.3d 738, 744 (8th Cir. 2020) (quoting Combs, 878 F.3d at 646); see also Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (ALJ's RFC assessment must be supported by medical evidence).  Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (some medical evidence must support the determination of the claimant's RFC).  An ALJ's RFC determination should be upheld if it is supported by substantial evidence in the record.  See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

It is the claimant's burden to establish his or her RFC.  Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004).  However, the ALJ has an independent duty to develop the record, despite the claimant's burden. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The ALJ must neutrally develop the facts."). "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) (quoting Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)).  In some cases, the duty to develop the record requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. See 20 C.F.R. §§ 404.1519a(b), 416.945a(b).

For claims like Plaintiff's that are filed on or after March 27, 2017, an ALJ evaluates medical opinions and administrative medical findings pursuant to 20 C.F.R. § 404.1520c.  These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is to evaluate the persuasiveness of medical opinions and prior administrative medical

findings in light of the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes: (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies."  20 C.F.R. § 404.1520c(a)-(c).

Under the new regulations, supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and, therefore, an ALJ must explain how he considered the factors of supportability and consistency in his decision.[3]  20 C.F.R. § 404.1520c(b)(2).  An ALJ may, but is not required to, explain how he considered the remaining factors.  Id.; see also Brian O. v. Comm'r of Soc. Sec., No. 1:19-CV-983-ATB, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

---

[3]"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

8

> **B.    ALJ's Evaluation of Opinion Evidence Regarding Plaintiff's Physical Impairments**

Plaintiff argues the ALJ erred by failing to properly evaluate the opinion evidence and that she improperly relied on the opinion of Dr. Jung, a non-examining, consultative physician, in determining Plaintiff's RFC. Defendant responds that the ALJ properly evaluated the persuasiveness of Dr. Jung's administrative medical findings under the new regulations.

On August 8, 2017, agency medical consultant Dr. Young reviewed the evidence of record as of that date, including Plaintiff's self-reported limitations and medical records from Plaintiff's treating physicians, Robert W. Thompson, M.D., and Grant Kleiber, M.D.  (Tr. 48).  At the time Dr. Jung reviewed Plaintiff's medical records, Plaintiff had undergone four surgeries between June 3, 2016, and March 20, 2017, for treatment of CTS and TOC.  More specifically, on June 3, 2016, Dr. Kleiber performed a right CTS release, a right pronator teres lengthening, and a right median nerve decompression. (Tr. 286-88); on July 1, 2016, Dr. Kleiber performed a left CTS release, a left pronator teres lengthening, and a left median nerve decompression, (Tr. 221-23); on September 30, 2016, Dr. Kleiber performed left ulnar nerve decompressions at the elbow and wrist, (Tr. 278-80); and on March 20, 2017, Dr. Thompson performed a left thoracic outlet release with resection of the first rib,  (Tr. 203-5).  In June 2017, Dr. Thompson wrote in his treatment notes that Plaintiff was making reasonable progress in recovery from surgery, but she had a pain-limited range of motion of the upper extremity and other restrictions. In the records before Dr. Jung, it was not

9

specified what these restrictions were.[4]  After Dr. Jung's review, on September 29, 2017, Dr. Thompson performed a right thoracic outlet release with resection of Plaintiff's first rib.[5] (Tr. 835)

Based on a review of the records before him, Dr. Jung opined that Plaintiff could lift and/or carry 10 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours.  He also opined that Plaintiff could never climb ladders, ropes, or scaffolds, but she had no manipulative limitations, although she should avoid concentrated exposure to hazards, such as machinery or heights. (Tr. 50-54).  Dr. Jung discounted the opinion of Dr. Thompson, which Dr. Jung summarized as follows: Plaintiff was "currently disabled"; that she has a "a strong clinical diagnosis" and has "undergone extensive previous treatment, including prolonged physical therapy"; and was not "likely to improve satisfactorily with physical therapy alone."  (Tr. 49).  Dr. Jung noted that Dr. Thompson's opinion appeared to be "for the current timeframe," and he did not project what Plaintiff's limitations would be based on her expected recovery.  (Tr. 51).

In her decision, the ALJ found Dr. Jung's opinion regarding Plaintiff's physical impairments persuasive because it was "consistent with [Plaintiff]'s medical record as a whole, as more fully discussed above."  (Tr. 21).  The ALJ incorporated Dr. Jung's findings as to Plaintiff's physical limitations in making her RFC determination.

---

[4]Following the ALJ's unfavorable decision, Plaintiff's counsel submitted to the Appeals Council a note dated June 7, 2017, in which Dr. Thompson stated Plaintiff was limited to no sustained overhead lifting with her left upper extremities, no prolonged repetitive actions with her left arm, and no lifting or pulling more than five pounds with her left upper extremity.  (Tr. 9).

[5]Later in April 2019, Plaintiff had re-operative surgery for right and left subcoracoid exploration and brachial plexus neurolysis. (ECF No. 23, Ex. 1 at 11-13).  Medical records from the surgery were not before the ALJ or the Appeals Council.

In Step Four of her decision, the ALJ summarized many of Plaintiff's medical records, including five of her surgeries, the latest being on September 29, 2017. The ALJ noted the following with regard to the more recent medical records, which are dated after Dr. Jung's review:

> In December 2017 and March 2018, [Plaintiff] denied numbness or tingling in her arms or hands and demonstrated full range of motion in her upper extremities with normal grip strength bilaterally, with left greater than right, though as of March 2018, she was still on a work restriction and a lifting weight limit of five pounds. However, in early April 2018, [Plaintiff] reported increasing chest tightness pain and muscle spasms and received therapeutic Botox injections for bilateral pectoralis major muscle spasms. …
>
> On exam in mid-October 2018, [Plaintiff] denied any neck or back pain, had some tightness and muscle spasms in her lower back, minimal numbness and tingling in her upper extremities bilaterally, and demonstrated full range of motion in her upper extremities bilaterally, including overhead reaching with smooth mechanics, normal bilateral grip strength, and normal reflexes throughout with normal coordination. [Plaintiff]'s physician noted at that time that [Plaintiff] was overall clinically stable with chronic pain symptoms but making steady progress and no symptoms characteristic of recurrent neurogenic TOS, but more likely longstanding brachial plexus irritation, for which she would continue to receive trigger points and muscle injections, as well as regular physical therapy. [Plaintiff] was allowed to increase her upper extremity activity as tolerated at that time, with a 5-pound weight limit.

(Tr. 21)

The ALJ noted that in May 2018, nine months after Dr. Jung's review, Dr. Thompson opined that Plaintiff was unable to return work at that time, and that she was restricted to no sustained overhead activities, no prolonged repetitive activities with both arms and hands, and no lifting, pushing, or pulling more than five pounds with both upper extremities, but by mid-October 2018, Dr. Thompson had released Plaintiff from most of these restrictions, and she was allowed to increase her upper extremity activity as tolerated, but with a five-pound weight limit.[6]  (Tr. 21).

---

[6] The ALJ did not have medical records from Dr. Thompson from a visit on January 17, 2019, in which Dr. Thompson noted, "Overall [Plaintiff] is having difficulty and making very little progress. The present symptoms are of significant concern for this interval after surgery and most likely reflect inflammation and muscle spasm, recent secondary injury, recurrent neurogenic TOS and longstanding brachial plexus irritation that will probably persist such that re-operative surgical treatment needs to be

11

The ALJ's RFC determination was less restrictive than Dr. Thompson's medical findings and opinion. The ALJ discounted Dr. Thompson's opinion based on Plaintiff's daily activities. The ALJ wrote, "To the extent, Dr. Thompson's restrictions are considered a medical opinion, they are found to be persuasive to the extent they are consistent with the residual functional capacity above, as [Plaintiff] reports that she is able to clean, do laundry, grocery shop, perform personal care, and care for children." (Tr. 21).

At the outset, the Court notes that under the new regulations, supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions, and these are the only two factors an ALJ must address when explaining the weight he or she assigned a medical opinion. 20 C.F.R. § 404.1520c(b)(2), see also Brian O., 2020 WL 3077009 at *4. When evaluating a medical opinion, an ALJ should consider the other factors, but it is not error to omit discussion of these factors in a written decision. Id.

In this case, the ALJ did not comply with the regulations when evaluating Drs. Jung's and Thompson's opinions. When evaluating Dr. Jung's opinion, she summarily wrote that his opinion was consistent with the medical records without providing any analysis. It not enough to merely state that an expert's opinion is "significantly persuasive as it is consistent with the claimant medical record, as more fully discussed above." (Tr. 21). "[W]hile an ALJ's explanation need not be exhaustive, boilerplate or 'blanket statement[s]' will not do." Lucus v. Saul, 960 F.3d 1066, 1069 (8th Cir. 2020) (quoting Walker v. Comm'r, Soc. Sec. Admin., 911 F.3d 550, 554 (8th Cir. 2018)). Furthermore, the ALJ failed to address "supportability" at all, let alone other factors such as the doctors' relationships with Plaintiff, their specializations, or

---

considered." (ECF No. 23, Ex. 1 at 2-3). On April 23, 2019, following the ALJ's adverse ruling, Dr. Thompson performed reoperative surgery. (Id. at 12).

other factors, such as familiarity with disability program polices. See 20 C.F.R. § 404.1520c(a)-(c). In her decision, the ALJ cursorily mentioned the "consistency" factor but failed to address "supportability" whatsoever and, like the ALJ in the Lucas case, she ignored or failed to discuss facts highly relevant to the factors listed in 20 C.F.R. § 404.1520c(a)-(c), such as the doctors' respective specialties or Dr. Thompson's relationship with Plaintiff.[7]

In evaluating the persuasiveness of the two medical opinions, the ALJ did not discuss the factors as required by 20 C.F.R. § 404.1520c(b)(2). The ALJ did not address supportability and devoted very little to the discussion of consistency, which was more than just a drafting error. Lucus, 960 F.3d at 1069 ("failure to comply with SSA regulations is more than a drafting issue, it is legal error"); Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003) (contrasting a "mere drafting oversight" with the "failure to follow . . . [t]he Commissioner['s] duly promulgated regulations"). The Court reviewed the record in this case, and Dr. Jung's opinion was not consistent with the record as a whole in many significant respects. The Court finds the ALJ's failure to address these inconsistencies is reversible error.

Dr. Jung limited Plaintiff's weight restrictions to 10 pounds occasionally and 10 pounds frequently. This is in direct contradiction to Dr. Thompson's limitations, who throughout the medical records noted Plaintiff had a five-pound lifting restriction. (Tr. 845, 932, 934, 1155). No other medical source opined Plaintiff could lift ten pounds. Dr. Jung also found Plaintiff had no manipulative limitations. Again, this is contrary to Dr. Thompson's findings and treatment notes. Dr. Thompson often noted Plaintiff had manipulative and overhead reaching restrictions. (Tr. 845, 932, 934, 1155). Dr. Jung's opinion is also not consistent with the treatment notes from Plaintiff's other doctor, Dr. Kleiber, who treated Plaintiff for CTS, and noted on a number

---

[7]As Plaintiff points out in her brief in support of her complaint, Dr. Jung is a board-certified ophthalmologist. Dr. Thompson is a board-certified vascular surgeon, specializing in TOS. (ECF No. 23 at 6-7).

of occasions that Plaintiff was unable to work or return to her job. (Tr. 296, 309, 317, 346, 402). The ALJ failed to reconcile these inconsistencies.

Dr. Jung justified his less restrictive limitations by noting that Dr. Thompson's opinion was for a point of time in February 2017, and Dr. Thompson failed to project what Plaintiff's limitations would be based on a recovery that could be expected. But Plaintiff did not recover as expected. She underwent a fourth surgery on March 20, 2017, a fact that supports Dr. Thompson's opinion that Plaintiff continued to have pain and physical restrictions. Dr. Jung mentioned but failed to address how a fourth surgery impacted Plaintiff's physical abilities. In addition, following Dr. Jung's opinion, Plaintiff underwent a fifth surgery. The ALJ listed this surgery in her discussion of Plaintiff's medical records but failed to address how the fifth surgery impacted the persuasiveness of Dr. Jung's opinion, considering his opinion appears to be based on the supposition that Plaintiff would recover from her four surgeries and did not require additional surgical intervention.

Defendant argues the record shows Plaintiff underwent a series of "successful" surgical procedures, and "although she was limited by her impairment, she remained capable of a range of sedentary work." (ECF No. 28 at 2-3). The Court does not agree with this characterization of the record. From the alleged date of onset, June 3, 2016, Plaintiff was under continuous care for CTS and TOC and had five surgeries in 16 months, the results of which were mixed. While some of Plaintiff's symptoms improved with the surgeries, not all of her symptoms were resolved and some symptoms later re-emerged. It is not the case that Plaintiff had one surgery or a series of surgeries over a short period of time and then recovered. Plaintiff was under continual care and received surgical treatments during the entire relevant time period. Furthermore, throughout the medical records, there are treatment notes that Plaintiff could not return to work, was restricted to lifting five pounds, and had manipulative and overhead reaching restrictions, all of which were

14

discounted by the agency's consultative medical expert. Dr. Jung's opinion was not consistent with the record as a whole in many significant respects, and the ALJ failed to address these inconsistencies. The ALJ did not properly discuss how the evidence supported Dr. Jung's RFC conclusions and failed to resolve material inconsistencies between his opinion and the evidence in the record.

Finally, the ALJ discounted Dr. Thompson's opinion about Plaintiff's limitations on the basis that Plaintiff "is able to clean, do laundry, grocery shop, perform personal care, and care for children." (Tr. 21). The ALJ's summary of Plaintiff's daily activities, however, is not in step with the record as a whole. At the hearing, Plaintiff testified that she had pain in her chest and problems with her hands when she does housework and laundry. (Tr. 38). She testified that she does not sweep or mop, and when she does laundry or dishes, she must take frequent breaks. (Id.) For example, Plaintiff testified she is only able to fold five pieces of laundry at a time before taking an hour-long break. (Id.) Plaintiff also testified that she does not grocery shop by herself, but rather she goes with her family, as she is unable to lift anything. (Tr. 40). As for caring for children, Plaintiff testified that she lives with her sister and her four-year-old niece, but there was no testimony that she provided childcare. Plaintiff testified that she enjoyed spending time with her niece, but her niece was in preschool until 1:00 pm, "and then she goes to my mother for daycare." (Tr. 37).

Defendant states that Plaintiff's Function Report indicated Plaintiff did laundry, helped take care of two godsons, prepared meals each day, drove a car, went shopping in stores, and had few if any problems with personal care. This is a mischaracterization of the Function Report. Plaintiff stated she did "some laundry" and that her godsons helped her more than she helped them. (Tr. 165-67). As for meal preparation, she stated that she mostly microwaves food and

15

serves frozen pizza, and that she only has use of one arm. (Id.) As for personal care, plaintiff stated that she had difficulty in dressing, bathing, and hair care. (Id.)

Contrary to the ALJ's assertion, Plaintiff's daily activities do not refute Dr. Thompson's medical opinions regarding Plaintiff's physical limitations, because the ALJ did not properly characterize Plaintiff's daily activities as she performed them. Plaintiff's description of what she did was far more limiting than what the ALJ detailed, and there is no evidence in the record that her daily activities were otherwise. Plaintiff's activities, as she described them, were entirely consistent with Dr. Thompson's restrictions and medical opinions, and it was error for the ALJ to find that they were somehow inconsistent. Defendant's argument that Plaintiff appeared to be overemphasizing or exaggerating her symptoms is not consistent with the record in this case. Finally, the fact Plaintiff can prepare simple meals and do some light chores "does not constitute substantial evidence that . . . she has the functional capacity to engage in substantial gainful activity." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998); see also Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005) (it is well-settled law that a claimant need not be bedridden or helpless to be found disabled).

## V.     Conclusion

The Court's task "is to determine whether the ALJ's decision 'complies with the relevant legal standards and is supported by substantial evidence in the record as a whole.'" Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010) (quoting Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008)). The Court finds that it does not in this case. For the reasons set forth above, the Court finds the reasons the ALJ found for discounting Dr. Thompson's medical opinions and restrictions and crediting Dr. Jung's opinion were not supported by the record and were inconsistent with controlling law and Social Security guidelines. The Court further finds the ALJ's determination regarding the impact Plaintiff's symptoms had on her RFC is not supported

16

by substantial evidence in the record as a whole. The Court also finds the ALJ's findings regarding Plaintiff's daily activities are not supported by the record. Therefore, the Court remands this matter to the Commissioner for further proceedings consistent with this Memorandum and Order.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this   24th   day of September, 2021.